# BURNETT v. UTSMAN.

PATENTS; INTERFERENCE; DILIGENCE.

1. Where in an interference it appears that prior to the filing of the application of one of the parties, he and another had filed a joint application for a patent for the same invention, while the facts will be closely scrutinized (citing *Hewlett* v. *Steinberger*, 40 App. D. C. 287), if it appears that the filing of such joint application was an inadvertence, due to a lack of knowledge of patent law, it will not be fatal to his rights.

2. There is no arbitrary rule by which diligence may be measured; in other words, the circumstances of each case must control. (Following *Woods* v. *Poor*, 29 App. D. C. 397.)

3. In an interference involving the invention of a machine designed to strip the waste yarn remaining on bobbins, after their discharge from the looms, the evidence showed that the junior party, a poor and uneducated man, at the time of the entry of the senior party into the field, had made and disclosed the invention and was then industriously endeavoring to protect his rights by filing an application; that instead of waiting upon two parties from whom he was endeavoring to obtain money to file his application, he communicated with a patent attorney and endeavored to induce the mechanical instructor of the high school in his town to make drawings, and within a period of three or four months he succeeded in interesting another party in his invention and lost no time thereafter; it was

*held* that he was not lacking in diligence, and a decision of the Commissioner awarding him priority was affirmed.

No. 1103.   Patent Appeals.   Submitted March 15, 1917.   Decided April 23, 1917.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference proceeding.          *Affirmed.*

The facts are stated in the opinion.

*Mr. Horace A. Dodge, Mr. Harrison F. Lyman,* and *Mr. W. K. Richardson* for the appellant.

*Mr. Arthur E. Dowell* for the appellee.

Mr. Justice ROBB delivered the opinion of the Court:

This is an appeal from a decision in the Patent Office in an interference proceeding awarding priority of invention to George W. Utsman.   The invention covers a machine designed to strip the waste yarn remaining on bobbins, after their discharge from the looms.   The issue is expressed in a single count, as follows: "In a bobbin-stripping machine comprising yieldable stripping jaws, gripping jaws adapted to engage the base of the bobbin and draw the barrel thereof through said stripping jaws, and means for opening said gripping jaws to discharge the stripped bobbin."

Charles S. Burnett is the senior party, and we agree in the findings of the Patent Office that he has established conception of the invention as early as April 23, 1913, and a reduction to practice as early as May 20, 1913.

Utsman, at the time he conceived this invention, was about twenty-five years of age and a resident of West Durham, North Carolina, where he was intermittently employed in a tinshop at $2 per day.   He was married and solely dependent upon his earnings for his livelihood.   In addition to his handicap of poverty, he was without education, being unable even to read.

The idea of constructing such a machine first occurred to him in the summer of 1910, and he proceeded to make a wooden model which, however, subsequently was destroyed and does not figure in this case. During the fall of 1912 he built a full-sized machine which clearly embodied every element of the issue. This machine was operated by hand in the presence of several witnesses prior to Burnett's entry into the field. The Patent Office tribunals were not satisfied that the operation of this machine amounted to reduction to practice, and we adopt their finding on this point. The evidence, however, leaves no room for doubt that Utsman had conceived and disclosed the invention prior to Burnett's entry into the field.

On March 25, 1913, Utsman entered into a contract with a Mr. Fuller and a Mr. Blacknall, under which he agreed to assign them a half interest in his invention, provided they would pay the necessary fees to secure a patent thereon. On the very day of Burnett's entry into the field Utsman had his wife write a patent attorney in Washington "in regard to invention I am trying to have patented." Accompanying the letter was a rough sketch of the invention. On April 26th the attorney replied that the sketch did not sufficiently disclose the invention, and suggested that a complete set of drawings be made and forwarded to him. Thereupon Utsman, not being able to pay for the drawings, and Blacknall and Fuller being unwilling to do so, hauled his machine from the Blacknall blacksmith shop, where it then was, to the city high school, in the hope that the mechanical instructor of the school would be able to make the necessary drawings; but again he was disappointed, as the instructor was unable to do so. Since the patent attorney's letter was dated April 26th, it is probable that it was some time in May before Utsman learned that the mechanical instructor could not make the drawings. He certainly had done all he could up to that time. In August he approached a Mr. William D. Hester with reference to his invention, and showed him a sketch of the machine. Later, either the last of August or the first of September, he showed him the 1912 machine. The result was that Hester took an assignment of Utsman's interest,

and together, prior to the 9th of September, 1913, they constructed another machine, in which they used certain parts of the old, but constructed the frame of cast iron instead of wood. Thereupon Hester filed a joint application, and later, upon the advice of other counsel, the application of this interference was filed and the joint application abandoned.

We are satisfied that the filing of the Utsman and Hester application was an inadvertence, due to lack of knowledge of patent law. Utsman had fully disclosed the invention before he ever saw Hester. Hester's contribution was merely that of a mechanic. While the facts in such a case will be closely scrutinized (*Hewlett* v. *Steinberger*, 40 App. D. C. 287), if satisfied, as here, that a pure mistake has been made, the real inventor will be recognized.

As we have previously suggested, there is no arbitrary rule by which diligence may be measured; in other words, the circumstances of each case must control. *Woods* v. *Poor*, 29 App. D. C. 397. Here there is no doubt whatever that Utsman is in fact the prior inventor. At the time of Burnett's entry into the field Utsman had made and disclosed the invention and then was industriously endeavoring to perfect his rights by the filing of an application for patent. Instead of waiting upon Blacknall and Fuller, he communicated with a patent attorney and then made a further effort to obtain the necessary drawings. Within a period of three or four months he succeeded in interesting another party in his invention, and lost no time thereafter. The conduct of this poor and unlettered man throughout has been characterized by perseverance and good faith, and we see no reason for disturbing the decision of the Patent Office awarding him priority. The decision is affirmed.

*Affirmed.*